Glenn Thomas PRINCE, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–03–01298–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 19, 2006.

Rehearing Overruled May 11, 2006.

James M. Leitner, Houston, for appellants.

Bridget Holloway, Houston, for The State.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

A jury convicted appellant of capital murder, and the trial court sentenced him to life in prison. Appellant raises six issues on appeal. In his first four issues, appellant argues the trial court erred by: (1) admitting evidence of two extraneous offenses; (2) limiting defense counsel's cross-examination of two State witnesses; (3) excluding a third party confession; and (4) allowing the State to argue the jury could use the fact appellant committed two extraneous offenses as evidence of his guilt in the charged offense. In issues five and six, appellant argues the evidence is legally and factually insufficient to sustain his conviction. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 13, 1982, at approximately 1:30 a.m., Cao Thanh Nguyen was found murdered in a convenience store. A few potential customers entered the store following the murder, discovered the victim's body, and called the police. One of the customers noticed the register alarm was sounding. An employee at a service station across from the store testified that at approximately 1:50 on the morning of the murder, she heard tires squealing and saw a car rapidly depart from the convenience store.

Police who investigated the murder contacted the district manager of the convenience store and asked him to come to the store and turn off the register alarm. Only coins remained in the register, but officers found cash in the victim's pocket. At the time of trial, the manager could not remember how much money was taken, but testified that store clerks were instructed to keep only $35.00 in the register to reduce robberies. Although an incident report might have been filed by the corporate owner of the convenience store, that corporation no longer exists, so any reports have been destroyed. The investigating officers collected fingerprint evidence, blood, and other evidence from the scene, but were unable to identify the person responsible for the murder.

The case was assigned to the Harris County cold case squad in May 1999.

DNA analysis was performed on the blood samples and the crime laboratory determined that three blood samples from the floor and the victim's shoe did not match the victim's blood type. Appellant became a suspect after the DNA profile of the unknown samples was processed in the computer system of the Texas Department of Public Safety. Police obtained a warrant for samples of appellant's blood and saliva. The three blood samples from the crime scene were determined to be consistent with appellant's DNA profile. Appellant was arrested, tried, and convicted of capital murder.

## DISCUSSION

### I. Extraneous Offenses

In issue one, appellant contends the trial court erred in admitting evidence of two extraneous offenses at the guilt—innocence phase of trial. During the guilt—innocence phase of the trial, after the State's DNA expert was cross-examined regarding possible contamination of the DNA sample, the State sought to introduce evidence of two extraneous robberies appellant committed a decade after the present offense. The State argued that the defense, through cross-examination of the State's witnesses, had offered defensive theories that the DNA evidence was contaminated and that the murder did not occur during the commission of a robbery. Specifically, the State argued that "the defense ... opened the door on the issue of motive, intent, mistake as to the robbery and also identity as to the individual through cross-examination of the DNA expert." The State then described the similarities between the 1982 capital murder and the two 1992 robberies and explained the two extraneous 1992 offenses by appellant were offered to show intent, lack of mistake, and to rebut the defensive theory

that the DNA results may be mistaken due to contamination.

Appellant objected to the admission of the extraneous offense evidence pursuant to Texas Rules of Evidence 403 and 404 as follows:

I object to either of those 1992 aggravated robberies. I object that they are not relevant. I object that their prejudice outweighs any probative value; that they are inadmissible character evidence as per Texas Rules [sic] of Evidence 404 and to be tried as a criminal generally violates [appellant's] rights to due process through both the State and Federal Constitution.

The trial court found the extraneous offenses were relevant, that their probative value outweighed their prejudicial value, and they tended to show motive, intent, opportunity, and lack of mistake. The trial court granted appellant a running objection to the evidence on extraneous offenses. At defense counsel's request, the trial court instructed the jury they could only consider evidence of the extraneous offenses "in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose." The extraneous offense evidence is summarized as follows:

*Lam Nguyen*

On December 15, 1992, Lam Nguyen was the cashier at a convenience store on Maxey Road. That morning, appellant entered and asked for cigarettes. Nguyen informed appellant that he did not have any and appellant left. Shortly thereafter, appellant re-entered the store, and asked to use the restroom. Nguyen informed him they did not have a public restroom and appellant left. Nguyen turned to wash his hands at a sink behind the front

counter when he heard a noise. He turned and saw appellant with a knife. When appellant demanded the money, Nguyen bent down and said, "Where is my gun?" Appellant was frightened, ran out of the door, and drove off very quickly. Nguyen recorded the license plate number, called the police, and made a report. Later, after Nguyen identified appellant in a line-up, appellant was tried and convicted.

*Jennie Estrada*

On December 16, 1992, Jennie Estrada was a clerk at convenience store in Southeast Houston. Appellant entered the store at night and asked to use the restroom. Estrada explained to him that they did not have a public restroom. Appellant then asked about an older Asian man who worked at the store, and Estrada informed him that Nahija was not working at the time. Appellant left and later returned with his hand behind his back, and asked for cigarettes. Appellant then raised a crowbar in a threatening manner and Estrada backed up and grabbed the phone to call the police. Appellant hit the no-sale button on the register, it opened, and he took all of the cash, but not the coins. Appellant then left the store and drove off in a car. Thereafter, Estrada identified appellant in a line-up.

### A. Rule 404

Generally, evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion. Tex.R. Evid. 404(a). Evidence of other crimes, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex.R. Evid. 404(b). Thus, identity, intent, and the rebuttal of defenses are valid purposes for admitting evidence pursuant to Rule 404(b). *Johnson v. State*, 68 S.W.3d 644, 651 (Tex.Crim.

App.2002) (extraneous offenses were relevant to establish a scheme of robbing to show that the murder was committed during the course of the robbery to support a capital murder indictment).

If the trial court determines the offered evidence has relevance apart from or beyond character conformity, it may admit the evidence and instruct the jury the evidence is limited to the specific purpose the proponent advocated. *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim.App.1990). Questions of relevancy should be left largely to the trial court, relying on its own observations and experience, and the conviction will not be reversed absent an abuse of discretion. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim.App.1993).

### B. Intent

For the extraneous act to be admitted, the State must show it is relevant to a factor of consequence contested in the case. *Rankin v. State*, 974 S.W.2d 707, 709 (Tex.Crim.App.1996). Intent is a fact of consequence when the indictment requires the State to show beyond a reasonable doubt that a defendant committed an act with a specific intent. *Morgan v. State*, 692 S.W.2d 877, 880 (Tex.Crim.App. 1985). In this case, the indictment required the State to prove beyond a reasonable doubt that appellant killed the store clerk with the intent to commit a robbery. Thus, appellant's intent to commit robbery was a fact of consequence.

An extraneous act is relevant if it serves to make an elemental fact more or less probable. *Montgomery*, 810 S.W.2d at 387–88. The mode of committing the offenses and the circumstances surrounding the offenses in this case are sufficiently similar for the extraneous offenses to be relevant to intent. *See id.* The primary and extraneous offenses were similar in

that: (1) all three offenses were committed with a blunt instrument or a knife; (2) all three offenses were committed at convenience stores; (3) all three offenses were committed in Harris County; (4) all three offenses were committed by appellant, alone; (5) the two completed robberies resulted in the coins not being taken; (6) in all three offenses, nothing was stolen from the store clerk; and (7) in all three offenses appellant drove away very quickly. Because appellant's subsequent conduct made it more probable that he intended to commit robbery at the time the murder was committed, evidence of that conduct was relevant.

### C. Remoteness

 Appellant further contends the extraneous offenses were not admissible because they were committed more than ten years after the offense for which he was indicted. Rule 404, however, contains no time limitation. *Templin v. State,* 711 S.W.2d 30, 34 (Tex.Crim.App.1986). The rules of evidence impose time limitations on some evidence, such as prior convictions used to impeach a witness's testimony. TEX.R. EVID. 609. Rule 609 contains a general limitation of ten years for criminal convictions offered "for the purpose of attacking the credibility of a witness." That rule does not apply here because the extraneous offense evidence was not offered to attack a witness's credibility. The factors of similarity and remoteness of extraneous offenses are important only as to the relevancy and probative value of the offered evidence of extraneous offenses. *Linder v. State,* 828 S.W.2d 290, 297 (Tex. App.-Houston [1st Dist.] 1992, pet. ref'd).

A line of cases decided before September 1, 1986, the date the Texas Rules of Evidence were first enacted, held that extraneous offenses committed more than a few years before the charged offense were too remote to be admissible. *See Bachhof-* *er v. State,* 633 S.W.2d 869, 872 (Tex.Crim. App.1982) (extraneous offense committed four years and four months prior to instant offense too remote); *James v. State,* 554 S.W.2d 680, 683 (Tex.Crim.App.1977) (sexual assault committed two years and nine months prior to instant offense too remote); *Robledo v. State,* 480 S.W.2d 401, 402 (Tex.Crim.App.1972) (forgery committed four years and three months prior to instant offense too remote).

Those cases are distinguishable on their facts. In *Bachhofer,* the alleged extraneous offense took place in another state, and there was no final conviction for the extraneous offense. 633 S.W.2d at 872. In *James,* the court emphasized that the extraneous offense was committed by appellant when he was younger than thirteen years old and took place in a different state. 554 S.W.2d at 683. In *Robledo,* the court's decision was based on a specific forgery statute that excluded remote offenses. 480 S.W.2d at 402. Another and more important distinguishing characteristic of these earlier cases is that they were tried under common law principles, "which tended to favor exclusion of evidence." *Montgomery,* 810 S.W.2d at 375. The court noted in Montgomery that the "new rules favor the admission of all logically relevant evidence." *Id.; see also Lavarry v. State,* 936 S.W.2d 690, 695 (Tex.App.-Dallas 1996, pet. ref'd) (an unadjudicated ten-year-old extraneous offense was not so remote as to bar its admission).

In this case, two extraneous offenses were admitted to show appellant intended to commit a robbery when he murdered the store clerk. The fact that those offenses were committed ten years after the murder does not affect their admissibility on the issue of intent. The extraneous acts were similar to the charged offense and were probative evidence that appellant intended to rob the convenience store.

#### D. Rule 403

 Although admissible under Rule 404(b), the same evidence may be inadmissible under Rule 403 if the probative value of such evidence is substantially outweighed by unfair prejudice. When a further objection is made to extraneous offense evidence under Rule 403, the trial court must determine whether the danger of undue prejudice outweighs the probative value of the evidence. The relevant criteria in making such a determination include the following factors:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable, a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way;"

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from the consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Mozon v. State,* 991 S.W.2d 841, 847 (Tex. Crim.App.1999); *Montgomery,* 810 S.W.2d at 390. We review the trial court's ruling on whether to exclude evidence of other crimes under Rule 403 by an abuse of discretion standard. *Montgomery,* 810 S.W.2d at 391.

Keeping the above standards in mind, we examine whether the trial court abused its discretion in admitting the extraneous offense evidence in this case. First, the extraneous offenses made intent to commit robbery or attempted robbery in 1982 more probable and rebutted appellant's theory that the money missing from the register was either in the clerk's pocket or a result of miscalculation. Second, although extraneous offenses always possess the potential to influence the jury, any impermissible inference of character conformity can be minimized through a limiting instruction. *Lane v. State,* 933 S.W.2d 504, 520 (Tex.Crim.App.1996). In this case, the trial court gave a limiting instruction before the evidence of the extraneous offenses was presented to the jury, and in the jury charge. Third, the prosecutor used a minimal amount of time to develop evidence of the extraneous offenses. Significantly less than ten percent of the testimony in the State's case-in-chief was used to develop the extraneous offenses. *See id.* (holding extraneous offense testimony constituting less than twenty percent of the testimony in the State's case-in chief is not excessive). Finally, the State needed the extraneous offense evidence to show intent to commit robbery. Appellant attacked the evidence of robbery claiming the money in the clerk's pocket could have been the missing money from the register or the missing money from the register could have been the result of miscalculation. Thus, intent to commit robbery was a contested issue, and the extraneous offense evidence was necessary to show an intent to, or scheme of, robbing convenience stores. Under these circumstances, the probative value of the extraneous offense evidence outweighs any unfair prejudicial effect. The trial court did not abuse its discretion in admitting the extraneous offenses. Appellant's first issue is overruled.

#### E. Jury Argument Regarding Extraneous Offenses

■ Appellant argues in his fourth issue that the trial court erred in allowing the State to argue to the jury that they could use the extraneous offenses as evidence of his guilt in the charged offense. Specifically, the State argued:

> You also have the fact that you have heard other offenses. There is a special instruction in the charge as to how you are to consider that. You can take that into consideration for motive, intent, and it can go towards whether you believe that we proved beyond a reasonable doubt a robbery was committed in this particular offense and I submit to you that it was.

The trial court overruled appellant's objection to this argument, and referred the jury to the charge.

■ Appellant's issue four is predicated on a successful resolution of his first issue. Appellant argues that because the evidence of extraneous offenses was inadmissible, the State could not argue those offenses in closing argument. To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State,* 848 S.W.2d 85, 94–95 (Tex. Crim.App.1992).

In the present case, the State's jury argument could reasonably be deemed as summation of the evidence or a reasonable deduction from the evidence. The prosecutor properly informed the jury it could consider the extraneous offenses for limited purposes. Furthermore, the instruction by the trial court to follow the charge would cure any error. *Cf. Clarke v. State,* 785 S.W.2d 860, 875 (Tex.App.-Fort Worth 1990), *aff'd,* 811 S.W.2d 99 (Tex.Crim.App. 1991) (argument not referring to limited nature of admissibility of extraneous of-fenses held improper). Because the extraneous offenses were properly admitted for limited purposes, the State's argument was a reasonable deduction from the evidence. Appellant's fourth issue is overruled.

## II. Cross-examination of State's Witnesses

In issue two, appellant argues the trial court erred in limiting the cross-examination of State's witnesses John Martin Smith and Patrick Brooks. Smith and Brooks were the customers who discovered the body of the store clerk. Appellant argues his main defense was that he was not guilty of capital murder because there was no evidence that any murder occurred during the commission of an aggravated robbery or attempted aggravated robbery. Appellant contends the State had very little evidence, if any, to link appellant to a robbery, and the State wanted the jury to believe that appellant either stole money from the register or attempted to steal money from the register. One of the ways the State tried to accomplish this was to have the jury believe appellant at least attempted to open the register by hitting keys on the register that set off the alarm.

Through cross-examination, appellant sought to show the register alarm began sounding after John Smith went into the back room to look at the victim, indicating that it was at that time an attempt to open the register occurred. To show that Brooks may have triggered the register alarm, appellant sought to cross-examine both John Smith and Patrick Brooks regarding a statement Brooks made when he entered the store. Brooks said, "Hey Wong Tong" "If you don't get out here, I'm gonna rob ya." The State objected, and the trial court sustained the objection finding the prejudicial effect outweighed the probative value of the statement.

Appellant argued at trial that testimony regarding the statement by Smith was admissible under the statement against penal interest exception to the hearsay rule. *See* Tex.R. Evid. 803(24). On appeal, appellant contends he was denied his Sixth Amendment right to confront the witnesses against him. *See* U.S. Const. amend. VI. The Confrontation Clause provides criminal defendants with the right to physically face those who testify against them and the right to conduct cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 18–19, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). To preserve error on Confrontation Clause grounds, an objection must be made at trial as soon as the basis for such objection becomes apparent. *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim.App.2000). A hearsay objection on hearsay does not preserve error on Confrontation Clause grounds. *Paredes v. State*, 129 S.W.3d 530, 535 (Tex.Crim.App. 2004). Appellant did not object on Confrontation Clause grounds. Because appellant's issue on appeal does not comport with the objection made at trial, he has waived error. *See Banda v. State*, 890 S.W.2d 42, 62 (Tex.Crim.App.1994). Appellant's second issue is overruled.

### III. Third Party Confession

Appellant next argues the trial court erred when it excluded the third party confession of James Edward Lyles II. Appellant argues the statement by Lyles that another person, Bobby Welch, admitted he committed this murder was admissible under the hearsay exception for statements against penal interest. *See* Tex.R. Evid. 803(24). The trial court ruled there was not enough corroborating evidence to allow Lyles's statement to be admitted.

Counsel for appellant stated outside the presence of the jury that Lyles's testimony would be as follows:

[Defense counsel:] If I were allowed to call James Edward Lyles, II, to the witness stand in the trial of this case, he would under oath testify that he was in Pasadena, Texas ... in July of 1982.

In July of 1982, he was in the presence of an individual that he called "Spider" and he was in the presence of an individual by the name of Bobby Welch and that three of them went into a UtoteM store and that inside this UtoteM store, the manager of the UtoteM store was an Oriental, didn't have any thumbs, and he was trying to get the change made for this Bobby Welch guy and he was moving slow. Bobby Welch didn't like it and had some words with that individual who had words back with him. At that point in time, Bobby Welch pulled a knife out and told that individual that he was going to gut him just like he did the clerk over on .... —on Richey, that in conversations with those individuals later, he determined what he was talking about was this capital murder that we're in trial on today that occurred on Richey Road on March 12, slash, 13, 1982.

In response, the State argued that if Lyles testified, he would be impeached with a statement Lyles made in 1984. In the 1984 statement, Lyles stated he was arrested and in the custody of the Pasadena Police Department when he told an officer that he wanted to talk to a detective about a murder. Lyles told the detective that he knew a man by the name of Bobby Welch who made a statement about killing a clerk in Pasadena.

Lyles said he and Welch went into a convenience store where an Asian clerk was working. The clerk and Welch argued about something, and after they left the store, they both made disparaging remarks about the clerk and Asians. At that

point, Welch said to Lyles, "That is why I gutted the son of a bitch on Richey." The State argued nothing else was said about the clerk being killed, but Lyles might also testify that Welch was a "knife freak," who always carried four or five knives with him. The State informed the trial court that Lyles had one prior conviction for assault on a woman. The State also proffered to the court that Welch's DNA did not match the DNA found at the crime scene.

The trial court held there was not enough corroborating evidence to allow Lyles to testify about Welch's statement. We review the trial court's decision to exclude this hearsay evidence of a statement against penal interest under an abuse of discretion standard. *Cunningham v. State,* 877 S.W.2d 310, 313 (Tex. Crim.App.1994).

 A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. Tex.R. Evid. 803(24). Factors relevant to this inquiry include: (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant; (2) whether the declarant was so situated that he might have committed the crime; (3) the timing of the declaration; (4) the spontaneity of the declaration; (5) the relationship between the declarant and the party to whom the statement was made; and (6) the existence of independent corroborative facts. *Woods v. State,* 152 S.W.3d 105, 113 (Tex.Crim.App.2004).

In the present case, the guilt of the declarant is inconsistent with the guilt of appellant. There is no evidence in the record indicating the declarant's location or situation at the time of the murder. The declaration was made several months *after* appellant was arrested for the murder. The statement was made by the declarant to either the clerk of the store in the presence of his acquaintances or to some of his acquaintances in their car after he became angry at a convenience store clerk for taking a long time to make change following a purchase. This inconsistency is the result of the declarant making two different statements. The statement did not indicate that the declarant had intimate familiarity with the crime. It merely revealed general facts that could have been in the news reports of the crime or arrest. Furthermore, following the statement, Welch was investigated and his DNA did not match the DNA at the crime scene.

Accordingly, the six factors and physical evidence establish that the statement was unreliable. Because there were insufficient corroborating circumstances to indicate the trustworthiness of Welch's statements, we conclude appellant failed to show the trial court abused its discretion. Appellant's third issue is overruled.

## IV. Legal and Factual Sufficiency of the Evidence

 In issues five and six, appellant argues the evidence is legally and factually insufficient to sustain his conviction for capital murder. Appellant contends the evidence is legally insufficient because the State failed to prove, beyond a reasonable doubt, that appellant committed murder while in the course of committing or attempting to commit the offense of aggravated robbery. Appellant also contends the evidence is factually insufficient because no rational jury could have found appellant committed murder while in the course of committing or attempting to commit the offense of aggravated robbery.

 When conducting a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational tri-

er of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). When conducting a factual sufficiency review, we view all of the evidence in a neutral light and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004). There are two ways in which the evidence may be factually insufficient: (1) if the evidence supporting the verdict, when considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; and (2) weighing both evidence supporting the verdict and evidence contrary to the verdict, the contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* at 484–85. In conducting the factual-sufficiency review, we must give appropriate deference to the jury's findings, and we may not substitute our judgment for that of the jury. *Id.* at 482.

A person commits the offense of capital murder if he commits murder as defined under Section 19.02(b)(1) of the Texas Penal Code, and he intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat. TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon Supp.2005). Appellant was charged with committing murder in the course of committing or attempting to commit robbery. The evidence presented in this case is both legally and factually sufficient to support appellant's conviction of capital murder. John Smith testified that he did not know when the register alarm was first triggered, but he noticed it when he was searching near the register for a flashlight to check the victim's vital signs. Patrick Brooks did not recall hearing the register alarm. The register's alarm was sounding when the convenience store's district manager entered the store. He turned the alarm off at the request of the police. No bills were found in the register following the murder. The district manager testified that he calculated the amount of money missing at the time of the offense, but could not recall at the time of trial. On cross-examination, the manager testified that the money was not there and agreed he could not tell whether it was the result of mismanagement or someone taking the money. Several of the police officers and crime scene investigators heard the register alarm. The fingerprints on the register, however, did not match appellant's prints. DNA comparisons showed appellant's blood was found on or near the victim's body.

Viewing the evidence in the light most favorable to the verdict, we hold the evidence was legally sufficient for a rational jury to find the essential elements of capital murder beyond a reasonable doubt. Viewing the evidence in a neutral light, we observe that the jury decided in this case to believe the testimony elicited by the State regarding the robbery and to disbelieve appellant's cross-examination regarding the clerk taking the money or miscalculation of the money in the register. Because the jury is the sole judge of the weight and credibility of the witness testimony, and because the proof of guilt was not so obviously weak as to undermine confidence in the jury's determination of guilt beyond a reasonable doubt, or so greatly outweighed by contrary proof as to indicate that the beyond-a-reasonable-doubt standard could not have been met, we hold the evidence was factually

sufficient to support the verdict. Appellant's fifth and sixth issues are overruled.

The judgment of the trial court is affirmed.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

The court correctly determines that the trial court did not abuse its discretion by admitting evidence of the two 1992 aggravated-robbery offenses, but the majority does not inquire as to whether appellant put his intent in issue and employs a similarity analysis more appropriate to the identity issue. Nonetheless, the court properly affirms the trial court's judgment.

Although relevant, "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX.R. EVID. 404(b). However, extraneous offenses may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.; Montgomery v. State,* 810 S.W.2d 372, 387–88 (Tex.Crim.App. 1991) (op. on reh'g). Extraneous-offense evidence is also admissible to rebut defensive theories raised by the State's witnesses during cross-examination. *Ransom v. State,* 920 S.W.2d 288, 301 (Tex.Crim. App.1994). But merely introducing evidence for a purpose other than character conformity, or any of the other enumerated purposes in Rule 404(b), does not, by itself, make that evidence admissible. *Rankin v. State,* 974 S.W.2d 707, 709 (Tex. Crim.App.1996). The extraneous-offense evidence also must be relevant to a "fact of consequence" in the case. *Id.* "Extraneous offense evidence may be relevant to

more than one issue." *Taylor v. State,* 920 S.W.2d 319, 323 (Tex.Crim.App.1996). The disputed evidence in this case—an aggravated robbery and attempted aggravated robbery committed nearly ten years after the charged offense—was offered for several purposes and admitted for virtually all purposes identified in Rule 404(b).

The State offered the 1992 aggravated robbery offenses as admissible to prove motive, identity, intent, and "lack of mistake on part of the officers," and to rebut the defensive theory that the charged capital murder was a party offense. Appellant objected to the admission of this extraneous-offense evidence under Texas Rules of Evidence 403 and 404. The trial court initially found the 1992 aggravated robberies were relevant for some of the purposes listed in the second sentence of Rule 404(b), i.e. that they tended to show motive, intent, opportunity, and lack of mistake, and that the probative value of this extraneous-offense evidence outweighed its prejudicial effect. After making these rulings, the trial court granted appellant a running objection to the evidence on extraneous offenses and then instructed the jury that they could consider the evidence for virtually all of the purposes mentioned in Rule 404(b): [1]

> **The Court:** All right. Ladies and gentlemen, I want to give you an instruction now regarding evidence that you will soon hear. You are instructed if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense charged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant

1. *See Taylor v. State,* 920 S.W.2d 319 (Tex. Crim.App.1996) (holding that when extraneous-offense evidence is relevant to motive, intent, identity, and rebuttal of defensive theory, trial court may properly include more than one purpose in jury instruction).

committed such other offense or offenses, if any, and even then *you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.*

**A juror:** Would you rephrase that in a short sentence?

**The Court:** You will have that in the charge. Basically, if you hear evidence of another crime or wrong that is alleged to have been committed by the defendant, *you may not consider that for any purpose other than determining motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with this offense.* And you may only consider it if you believe the other crime or wrong beyond a reasonable doubt. You will [sic] given this in the charge that you have to take back with you.[2]

When, as in this case, a limiting instruction is requested,[3] the trial court "should instruct the jury that the evidence is limited to whatever specific purpose the proponent advocated." *Taylor v. State,* 920 S.W.2d 319, 323 (Tex.Crim.App.1996). The above instruction did not limit the jury's consideration to the specific purposes advocated by the State—motive, identity, intent, and lack of mistake on part of the officers, and to rebut the defensive theory that the charged capital murder was a party offense. Nor did the instruction limit the jury's consideration to the purposes the trial court mentioned— motive, intent, opportunity, and lack of mistake. Instead, the trial court instructed the jury that they could consider the extraneous offenses in determining not only motive, opportunity, intent, identity, and lack of mistake, but also preparation, plan, knowledge, and accident, if any.[4]

2. Emphasis added.

3. The majority opinion states:
 At defense counsel's request, the trial court instructed the jury they could only consider evidence of the extraneous offenses "in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose."
 Though defense counsel requested an instruction, he did not request this one; rather, defense counsel specifically asked the trial court to limit the instruction to "whatever the limited reason" for admitting the extraneous-offense evidence was. The trial court told the jury they could consider the 1992 aggravated robberies in determining motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of accident of appellant.

4. Appellant challenges the trial court's decision to allow the jury to consider the extraneous-offense evidence and argues that the jury should not have been allowed to consider it for any of the purposes listed in Rule 404(b); however, appellant does not argue the trial court's overly broad instruction resulted in any harm beyond the jury's consideration of the evidence for purposes of intent. In criminal cases, however, this court has discretion to review error preserved in the trial court but not argued on appeal. *See Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Although defense counsel did not specifically object to the court's instruction to the jury as including more purposes than the State urged or the trial court mentioned, defense counsel specifically asked the court to "give an [sic] limiting instruction to the jury prior to them hearing this evidence as to what the limited purpose is." When the trial court asked defense counsel what admonition he wanted the jury to receive, defense counsel responded, *"you're allowing this in for some reason, whatever that limited reason is ... If there is a limited reason, then I ask the jury be instructed what that limited reason is."* (emphasis added). The trial court then referred to the instruction in the jury charge and defense coun-

The trial court erred to the extent it instructed the jury that it could consider the extraneous offenses for purposes that were neither advocated by the proponent of the evidence nor relevant to any issue raised.

The only purpose the majority opinion addresses is intent; however, the majority's analysis, which focuses on the mode of committing the offenses and the circumstances surrounding the charged offense, pertains more to identity.

Evidence of an extraneous offense may be admissible to show identity when identity is an issue in the case. *Lane v. State*, 933 S.W.2d 504, 519 (Tex.Crim.App.1996). However, for the extraneous offenses to be admissible to show identity, there must be a showing that the extraneous offense committed by the accused was so nearly identical in method to the charged offense as to earmark it as the "handiwork of the accused." *Bishop v. State*, 869 S.W.2d 342, 346 (Tex.Crim.App.1993). The characteristics must be so unusual and distinctive as to be like a signature. *Taylor*, 920 S.W.2d at 322 (holding that when an extraneous offense is offered to prove identity, the common characteristics must be so unusual and/or distinctive as to be like a "signature"); *Bishop v. State*, 869 S.W.2d 342, 346 (Tex.Crim.App.1993); *Avila v. State*, 18 S.W.3d 736, 740 (Tex.App.-San Antonio 2000, no pet.) (holding that, although the two offenses shared general similarities, they were not substantial enough to warrant the admissibility of the extraneous conduct testimony). In determining similarity of the offenses for the purpose of establishing identity, the court must take into account both the specific

characteristics of the various offenses and the time interval between them. *Johnson v. State*, 68 S.W.3d 644, 651 (Tex.Crim. App.2002).

In this case, the majority concludes that the indicted and extraneous offenses were alike in several ways and notes the following similarities:

- all three offenses were committed with a blunt instrument or a knife;
- all three offenses were committed at convenience stores;
- all three offenses were committed in Harris County;
- all three offenses were committed by an individual acting alone;
- in two of the incidents, bills but not coins were taken;
- in all three offenses, nothing was stolen from the store clerk; and
- in all three offenses the perpetrator drove away very quickly.

Though it is true that comparisons can be drawn and similarities identified, the similarities noted by the majority are not the type of similarities Texas jurisprudence recognizes as a "defendant's handiwork" because they are not at all distinctive. All of the conduct in question occurred at Houston-area convenience stores, but there is nothing in this case that would serve as the "signature" of the perpetrator and thereby affirmatively link the charged offense (the 1982 capital murder) to the extraneous offenses (the 1992 aggravated robbery and attempted aggravated robbery) for identity purposes. The 1992 extraneous offenses are simply gar-

---

sel stated, *"I'm objecting to each and every one of those reasons in there as not being valid reasons for allowing this character evidence of the defendant in before this jury."* The trial court overruled the objection. Defense counsel asked the court for "a running objection to each and every question that is asked of each

and every one of the—these witnesses about these extraneous offenses in front of the jury" and the trial court granted the defense a running objection to the evidence after rejecting defense counsel's arguments against admission of the evidence. This action was sufficient to preserve error.

den-variety convenience-store robberies—not "signature" crimes.

The probity of evidence of other crimes, when introduced for purposes of identity, depends upon both the uniqueness of the modus operandi and the degree of similarity between the charged offense and the extraneous offenses. Here, the modus operandi was not unique or distinctive. The similarities cited by the majority are common components of armed robberies—an individual acting alone, with a knife or blunt object, who leaves very quickly after taking or attempting to take bills from a cash register. Whether considered alone or in combination, these characteristics lack the distinction necessary to trigger the identity exception in Rule 404(b).

Moreover, there is a dramatic and pronounced dissimilarity between the charged offense (1982 capital murder) and the extraneous offenses (1992 aggravated robberies) in that the former was a horribly violent, bloody crime that ended in the brutal stabbing and stomping death of the store clerk, while the latter offenses—committed nearly a decade later—involved only robbery or attempted robbery, no injuries in either, and property loss in only one. The perpetrator in the charged offense was an extremely violent person as was shown by the multiple knife wounds and evidence that the perpetrator stomped on the victim's chest during the attack, rupturing the victim's heart. The perpetrators in the two extraneous offenses were scared off by threats from one clerk and a call to the police from the other, without causing any injury in either case. This significant dissimilarity alone undermines the force of any inference of identity that might have flowed from the common, non-distinctive characteristics of the three offenses.

The times of day of all three offenses are also dissimilar. Neither the same type of weapon nor the same get-away vehicle was used in all three offenses. There is also the significant distinctive difference in the lapse of time between the two offenses in December 1992 and the March 1982 offense charged in the indictment. The extraneous offenses and the charged offense were separated by almost ten years. *See Johnson,* 68 S.W.3d at 651 (stating that sufficient similarity may be shown by proximity in time or by common mode of committing the offenses). By any relevant measure, there is nothing so distinctive or specific about these three offenses that would establish that they were all committed by the same person. This point is illustrated by the Court of Criminal Appeals' analysis in *Ford v. State,* a case in which our high court found that the two robbery offenses at issue—with stronger "identity facts" than are present here—were not sufficiently similar to warrant admission into evidence of the extraneous offense. 484 S.W.2d 727, 730 (Tex.Crim. App.1972). In *Ford,* the perpetrator of each robbery was a tall black man who wore a purple shirt and used a small pistol. *Id.* The robberies however, were separated by almost two months in time, and the first robbery was committed by four men, whereas the second was committed by only one who entered on the pretext of seeking work. *Id.* (emphasis added). The Court of Criminal Appeals observed, "there will always be similarities in the commission of the same type of crime. That is, any case of robbery by firearms is quite likely to have been committed in much the same way as any other." *Id.* at 730. "What must be shown to make the evidence of the extraneous crime admissible is something that sets it apart from its class or type of crime in general, and marks it distinctively in the same manner as the principal crime." *Id.; see also Walker v. State,* 588 S.W.2d 920, 924 (Tex.Crim.App.1979) (finding the two offenses at issue to be suffi-

ciently similar because (1) the offenses both occurred at night, in the same area, within a period of one month; (2) the perpetrator was alone, carried a small gun, and tied up the victims in a similar manner; (3) in both cases a robbery preceded the rape, and all coins but pennies were stolen from the victims); *Clarke v. State,* 785 S.W.2d 860, 867 (Tex.App.-Fort Worth 1990), *aff'd,* 811 S.W.2d 99 (Tex.Crim.App. 1991) (finding that evidence of an extraneous sexual assault was sufficiently similar to the offense charged where: (1) in both offenses the victims were attacked at home during the night; (2) the assailant used duct tape to blindfold both victims and bind their hands and feet; (3) the perpetrator either washed the victim's vagina after the attack or made the victim wash her vagina before he left; and (4) the perpetrator also used a knife in the attack and asked each victim whether she had a gun in the house).

In this case, the similarities are not substantial enough to warrant the admission of the extraneous offenses on this issue of identity. Rather, the similarities are more in the nature of the similarities common to the type of crime itself. *Compare Johnston v. State,* 145 S.W.3d 215, 224 (Tex. Crim.App.2004) (holding that extraneous offense evidence was not relevant to prove either identity or absence of mistake and was inadmissible to show that the defendant, "a chronic child abuser," acted in conformity with his character on the occasion at issue) *and Owens v. State,* 827 S.W.2d 911, 915 (Tex.Crim.App.1992) (holding that extraneous offense was inadmissible because the similarities between the charged offense and extraneous offense were not so unusual or particularized as to signal conclusively that they were the handiwork of the same person), *with Martin v. State,* 173 S.W.3d 463, 467–68 (Tex. Crim.App.2005) (holding that evidence of extraneous sexual assault was admissible for purposes of identity in prosecution for sex offense where defendant admitted that he falsely claimed to be a law enforcement officer as a "ruse" to pick up both the victim and the extraneous offense witness; the facts showed distinctive similarities to qualify as an exception to the general rule precluding extraneous offense evidence).[5]

---

5. *See also Johnson,* 68 S.W.3d at 651(holding that extraneous offense evidence was admissible where the offenses were committed within a few hours of each other, directed at lone women, and involving another victim's red Ford Taurus); *Ransom v. State,* 503 S.W.2d 810, 813 (Tex.Crim.App.1974) (holding that the offenses were sufficiently similar because the offenses were committed three days apart and both offenses were robberies with a gun and the defendant had an accomplice with him on both occasions); *Davis v. State,* 180 S.W.3d 277, 285–86 (Tex.App.-Texarkana, 2005, no pet. h.) (holding that evidence of extraneous offense was admissible to prove identity based on similar modus operandi in aggravated robbery and aggravated kidnapping prosecution, when all of the offenses occurred at the same time of light, in the same location and the attacker in all offenses wore the same type of clothing); *Thomas v. State,* 126 S.W.3d 138, 143–44 (Tex.App.-

Houston [1st Dist.] 2003, pet. ref'd) (holding that admission of extraneous offense was admissible to prove identity where victims were both women in their late sixties/early seventies and had been harassed at night for some time over the same period of time, perpetrator entered home by breaking a window, while leaving pornographic pictures outside one of the victims' home); *Reyes v. State,* 69 S.W.3d 725, 735–36 (Tex.App.-Corpus Christi 2002, pet. ref'd) (holding that trial court did not err in determining that extraneous-offense evidence of a prior incident of burglary and sexual assault allegedly committed by defendant was relevant to show identity); *Webb v. State,* 36 S.W.3d 164, 180–82 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (holding that the trial court abused its discretion in admitting extraneous offense because such evidence did not have any true relevance apart from the [appellant's] character or his actions in conformity therewith).

There is nothing so distinctive or specific about these three offenses that would tend to show that they were all committed by the same person. This point is perhaps best illustrated by the following side-by-side comparison of the characteristics of the three incidents in question:

| Date | Weapon | Name and Location of Convenience Store | Time of Day Offense Occurred | Actions of Perpetrator Before Offense | Injury or Death, if any, to Complaining Witness/Victim | Items Stolen |
|---|---|---|---|---|---|---|
| 12/15/92 | Knife | UniGrocery - East Houston | Morning | Perpetrator came in the store and asked for Marlboro cigarettes, left and returned a short time later and asked, "Do you have a restroom?" When clerk indicated there was no public restroom, perpetrator walked out the door and returned with a knife. | No injury; perpetrator ran out the door when complainant said, "Where is my gun?" "Where is my ... stick?" | Nothing stolen. |
| 12/16/92 | Crowbar | Stop 'n Go - Southeast Houston | Night | Perpetrator came in the store and asked to use the restroom and then asked if "that older man" [an Asian male] was working. When clerk indicated the man was not working, perpetrator left and returned later. On the second visit, he asked about cigarettes. Perpetrator raised crowbar in a threatening manner. | No injury; when clerk called police, perpetrator opened cash register, grabbed bills and left store. | Cash (bills), but not coins. |
| 03/12/82 | Knife | U-Tote-M - Pasadena | Late Night | **Not known.** | Violent, bloody murder; complainant suffered 7 stab wounds to the abdomen, 2 stab wounds to the chest, and traumatic rupture of the heart, as well as multiple cutting wounds of the neck and upper extremities. | **Disputed.** No bills remained in the cash register, only coins. |

Because the offenses are not sufficiently similar to constitute "signature" offenses, the trial court erred to the extent it admitted the offenses for purposes of establishing identity.

The similarity requirement necessary for admissibility based on identity, however, is diminished when the stated basis for admissibility is intent. *See Plante v. State*, 692 S.W.2d 487, 493 (Tex.Crim.App.1985). There was a scarce amount of other evidence offered for the jury to determine that this murder occurred in the course of the commission of an aggravated robbery or attempted aggravated robbery. The State's witnesses could only say that there was a difference between the amount of money that should have been in the cash register and the amount that was there. On cross-examination the State's witness acknowledged that the difference could have been the result of misbalancing as

opposed to a robbery. None of the fingerprints on the cash register were identified as belonging to appellant. There was an amount of money in the murdered store clerk's pants pocket that would have been near the amount the State's witness said should have been in the register. The store clerk had money in his billfold, which appellant argues is circumstantial evidence that there was some reason that the store clerk was carrying loose money in his pocket. There was no blood evidence around the cash register and no money or valuables appeared to have been taken from the store clerk.

Appellant sums up his argument that the trial court erred in allowing this prejudicial evidence in this way:

> "The only evidence of a robbery would be the natural presumption that it must have been for the purpose of a robbery. That might be a natural presumption, but it is not a legal presumption. The State realized this lack of evidence and that is why they wished to offer the extraneous offenses ... Evidence of the extraneous robberies of 1992, was therefore necessary for the jury to convict of capital murder in this case."

Appellant argues that by allowing the jury to infer the intent to rob in the capital murder case before them, from the evidence that he had an intent to rob in the 1992 offenses is in essence allowing the jury "to determine that he has an intent to rob generally ... [t]hat his character is one for which they could infer that he generally has an intent to rob, and therefore the instant case must be one of 'character conformity' for that particular character trait."

Evidence of a person's bad character is generally not admissible for the purpose of showing that he acted in conformity therewith. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex.Crim.App.2002). This evidence, however, may be admissible when it is relevant to a non-character conformity issue of consequence in the case such as establishing intent or rebutting a defensive theory. *Id.* Because trial courts are in the best position to decide these admissibility questions, an appellate court must review a trial court's admissibility decision under an abuse-of-discretion standard. *Id.* This standard requires an appellate court to uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Id.*

Under the indictment, to convict appellant of capital murder, the State had to prove that appellant intentionally murdered the complainant in the course of committing or attempting to commit robbery. *See* TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon Supp.2005). A person attempts to commit robbery if, with specific intent to commit robbery, he does an act amounting to more than mere preparation that tends but fails to effect commission of the offense intended. *See* TEX. PEN.CODE ANN. § 15.01(a) (Vernon 2003). To determine that appellant intended to commit robbery, the jury had to find that appellant had an intent to unlawfully appropriate property with the intent to deprive the owner of the property as well as an intent to obtain or maintain control of the property. *See* TEX. PEN. CODE ANN. § 29.02 (Vernon 2003), § 31.03(a) (Vernon Supp.2005).

Intent can be inferred from acts, words, and conduct of the accused. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991). If the State's direct evidence shows the intent element of the crime and that evidence is uncontradicted by the defendant or not undermined by cross-examination of the State's witnesses, the offer of other crimes is unjustified due to the lack of relevancy. *Rankin*, 974 S.W.2d at 719.

The majority opinion indicates that, because the indictment required the State

to prove beyond a reasonable doubt that appellant killed the complainant with the intent to commit a robbery, appellant's intent to commit robbery was a fact of consequence. This is contrary to the Court of Criminal Appeals decision in *Robbins v. State*. *See* 88 S.W.3d 256, 260–61 (Tex. Crim.App.2002) (holding that pleading not guilty to an offense that requires criminal intent is not sufficient, by itself, to put the defendant's intent in issue, so as to justify admission of prior bad acts or extraneous offenses under Rule 404(b)). This court should inquire as to whether appellant made his intent to commit robbery a fact of consequence through vigorous cross-examination, presentation of defensive theories, or other means. *See id.* at 261. The record shows that, by cross-examination, appellant suggested that no money or other property may have been taken from the complainant. If the jury concluded that no property was taken, it still could convict appellant of capital murder; however, it would have to conclude that appellant intentionally murdered the complainant in the course of attempting to commit robbery, rather than in the course of committing robbery. On this record, appellant's cross-examination sufficiently put in issue his alleged intent to commit robbery. *See id.* at 261–63 (holding that defendant put his intent at issue by going beyond his plea of not guilty through vigorous cross-examination of prosecution witnesses suggesting that the victim's death was caused by some means other than defendant's conduct, and therefore extraneous-offense evidence was admissible to prove criminal intent). Accordingly, the trial court did not abuse its discretion in allowing the jury to consider the 1992 offenses as to this issue of consequence. Although the record does not support the other purposes [6] as to which the trial court allowed

---

**6.** Motive is not an essential element of a criminal case and need not be proved to sustain a conviction for commission of the offense. *Bush v. State*, 628 S.W.2d 441, 444 (Tex.Crim. App.1982); *Zuliani v. State*, 903 S.W.2d 812, 826–27 (Tex.App.-Austin 1995, pet. ref'd). The admissibility of extraneous offense evidence to show motive is usually required to relate or pertain to other acts by the accused against the complainant in the offense for which the accused is presently being tried. *Foy v. State*, 593 S.W.2d 707, 708–09 (Tex. Crim.App.1980). The issue of motive was not raised in this case, and thus the extraneous offenses were not admissible under this theory.

Evidence of an extraneous offense to rebut a defense of "lack of opportunity" or "impossibility" is admissible under Rule 404(b). *See, e.g., Wheeler v. State*, 67 S.W.3d 879, 888 (Tex.Crim.App.2002); *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App.2001) (stating that extraneous offenses with other children may be admissible when defendant claimed that he lacked any opportunity to commit sexual abuse because many children were always in the same room). However, the issue of opportunity was not raised in this case nor did the State proffer the extraneous offenses for that stated purpose. It was error to admit the extraneous offenses for this purpose.

A claim that the alleged act was done by accident or mistake is a defensive issue that must be raised. Using accident or mistake as the basis for the introduction of extraneous offenses may be pointless if the defendant has not claimed accident or mistake. *Prior v. State*, 647 S.W.2d 956, 959 (Tex.Crim.App. 1983). In the instant case, appellant denied the alleged offense by his plea of not guilty, and never raised a claim that the conduct alleged in the indictment was the product of accident or mistake. Because neither accident nor mistake was raised, neither could serve as the purpose for admitting the extraneous offenses under Rule 404(b) and it was error to admit them on this basis.

Though extraneous offenses may be admissible under Rule 404(b) to prove plan, preparation, or knowledge, these issues were not raised in this case. Therefore, they could not serve as a proper purpose for admitting the extraneous offenses. *See Daggett v. State*, 187 S.W.3d 444, 2005 WL 3408057, at *4–5 (Tex. Crim.App. December 14, 2005). Courts frequently admit evidence of extraneous acts un-

the jury to consider this evidence, there is nothing to indicate any harm resulted from the jury's possible consideration of these offenses for the other purposes mentioned. Thus, there is no reason to reverse on this basis. The court correctly concludes that the trial court did not abuse its discretion in overruling appellant's Rule 403 objection. Therefore, the court correctly overrules appellant's first and fourth issues, and affirms the trial court's judgment.

der this exception not—as intended—to show acts the defendant took in preparation for the ultimate charged offense, but, rather for the improper purpose of showing repeated acts that are similar to the charged offense. *Id.* Repetition of the same act or same crime does not equal a "plan." *Id.* It equals the repeated commission of the same criminal offense offered obliquely to show bad character and conduct in conformity with that bad character—"once a thief, always a thief."

This bad-character-conformity purpose, whether express or not, is precisely what is barred by Rule 404(b). *Id.* Thus, if the proponent is unable to articulate exactly how an extraneous act tends to prove a step toward an ultimate goal or overarching plan, the evidence is not admissible to prove part of a "plan." *Id.* Plan or preparation was not raised and could not have served as a legitimate purpose for admitting the extraneous offenses in this case.