**Affirmed and Memorandum Opinion filed June 26, 2018.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-17-00381-CR

---

**HORACIO ESPARZA MORALES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 13
Harris County, Texas
Trial Court Cause No. 2088108**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Horacio Esparza Morales of assault of a family member, and the trial court sentenced him to 180 days' confinement in Harris County Jail. On appeal, appellant challenges his conviction on the ground that the trial court reversibly erred by admitting evidence of a prior assault against the same family member. Because we conclude that the trial court did not abuse its discretion in admitting this evidence, we affirm.

## Background

Appellant and his common law wife, Margo,[1] argued on April 20, 2016, at their home in Pasadena, Texas. Unclothed, Margo ran into the yard calling for help. A passing wrecker driver stopped and confronted appellant as appellant tried to drag Margo back inside the house. Both the driver's wife and one of appellant's neighbors spoke with 911 operators. Appellant left the scene, and Pasadena Police Department ("PPD") Officer David Badgett arrived shortly thereafter.

Badgett spoke with Margo, who told him that appellant hit her several times in the face and head. According to Badgett, Margo appeared to be in pain, and her lip was bleeding. Badgett took several pictures of Margo, which were admitted during appellant's trial. Margo told Badgett that she and appellant fought in the shower and that appellant punched her several times and pulled her outside the house. Margo described to Badgett how the assault occurred, showing him where it started in the bathroom and continued through the house to the yard. Badgett saw and documented with photographs a trail of blood from the master bathroom inside the house, through the house, along the side of the house, and to an exterior walkway; these photographs were admitted into evidence during appellant's trial. Margo told Badgett appellant had assaulted her three or four times previously, but she never pressed charges because appellant provided the only income for the family. Margo told Badgett she did not want to press charges against appellant for this offense, either. Badgett testified at appellant's trial regarding these facts.

PPD Officer Christopher Sweet, who also responded to the 911 call, testified at trial. Sweet spoke with appellant's neighbors, a husband and wife. The husband and wife told Sweet that they heard loud noises, looked outside their bedroom

---

[1] We identify the complainant by a pseudonym, "Margo."

window, and saw Margo naked, running outside the house next door and into the yard, screaming for help. The neighbors both described appellant as chasing Margo into the yard, and both told Sweet that they saw appellant hitting Margo.

A paramedic treated Margo at the scene and saw injuries consistent with an assault. Margo refused transport to the hospital for further evaluation. Margo also reported to the paramedic that appellant assaulted her. The paramedic testified regarding these facts at appellant's trial.

A few days after April 20, a detective from the PPD family violence unit, Sylvia Trevino, contacted Margo. During their conversation, Margo provided a different version of the facts. Margo told Trevino that she had been drinking that night, and that she and appellant argued. Margo chased appellant after the argument. Angry, appellant pushed Margo, causing her to fall and hit her face on a bathroom counter. Trevino also interviewed appellant as part of her investigation. After completing her investigation, Trevino presented her findings to the Harris County District Attorney's Office, which then filed the instant assault charges against appellant. Trevino testified to these facts at appellant's trial.

Margo testified as well, describing the April 20, 2016 incident as follows. She and appellant drank beer all day. Margo claimed to have consumed more than fifteen beers throughout the evening.[2] She and appellant decided to take a shower together around 11:00 p.m. During the shower, the two began to argue. Margo called appellant a "coward," and appellant angrily told Margo he would leave her. As appellant exited the bathroom, Margo grabbed appellant but appellant pushed her hand away. Margo slipped on the wet bathroom floor and her face struck a counter.

---

[2] Badgett, who had experience investigating driving while intoxicated offenses, testified that he smelled no odor of alcohol on Margo and that she did not appear to be intoxicated when he spoke with her on April 20, 2016. Margo denied drinking when Badgett asked her on April 20, but she told Badgett that appellant was intoxicated.

Appellant entered the couple's bedroom and began packing a bag. He then went outside. Margo, still undressed, chased him into the yard. Unpersuaded by appellant's attempt to convince her to go back inside, Margo sat down in the yard and yelled for the police. Acknowledging her trial testimony varied from the facts she told the officers, Margo said she lied to the officers because she was angry that appellant was trying to leave her. At the time of trial, Margo and appellant still lived together with their children.

Appellant's neighbors, a married couple who saw at least part of the incident on April 20, also testified. They both testified that, contrary to statements made to police the night of the incident, they had not seen appellant striking Margo.[3] And neither could recall talking with the police the evening of the incident.

The passing driver who stopped to help Margo on April 20 testified at appellant's trial. He explained that he saw Margo running out of her home naked, with appellant hanging onto her neck. The driver testified that he jumped out of his truck and went to help, while his wife, who remained in the truck, spoke to a 911 operator. He told appellant "to stop because he was trying to drag the heavier-set woman [Margo] inside." He saw appellant grabbing Margo by her hair and arm, trying to force her back into the house. He described Margo as having a "fat lip," bleeding from the mouth, and looking "like she had been in a fight." This witness saw no injuries on appellant. He also stated that appellant told him that "it was her fault."

After hearing the evidence and argument of counsel, the jury convicted appellant of Class A misdemeanor assault of a family member. The trial court

---

[3] The 911 call made by one of the neighbors was admitted into evidence. During the 911 call, this witness stated that his "neighbor [appellant] is beating up his wife in the street pretty bad. She's naked and she's asking for help."

sentenced appellant to 180 days' confinement in Harris County Jail. This appeal timely followed.

## Analysis

In a single issue, appellant asserts that the trial court reversibly erred by admitting evidence of an extraneous offense over his Rule 403 and Rule 404(b) objections.

### A.    Standard of Review and Governing Law

Evidence of a person's crime, wrong, or other act is not admissible to prove that person's character in order to show that the person acted in conformity with that character when allegedly committing the charged offense. *See* Tex. R. Evid. 404(b)(1); *see also Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Montgomery v. State*, 810 S.W.2d 372, 386-88 (Tex. Crim. App. 1990) (op. on reh'g). Evidence of other offenses, however, may be admissible when the evidence is relevant to a fact of consequence in the case. *See* Tex. R. Evid. 404(b)(2); *Montgomery*, 810 S.W.2d at 387-88. For instance, evidence of other crimes or wrongs may be admissible if it tends to establish some elemental fact, such as identity, intent, or knowledge; tends to establish some evidentiary fact, such as motive, opportunity, plan, or preparation, leading inferentially to an elemental fact; or rebuts a defensive theory by showing, e.g., absence of mistake or lack of accident. *Montgomery*, 810 S.W.2d at 387-88; *see also* Tex. R. Evid. 404(b)(2). If the trial court determines the offered evidence has independent relevance apart from or beyond character conformity, the trial court may admit the evidence and instruct the jury the evidence is limited to the specific purpose the proponent advocated. *See Prince v. State*, 192 S.W.3d 49, 54 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 387-88). However, even relevant

5

evidence may be excluded under Rule 403 when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403.

Because trial courts are best suited to decide these substantive admissibility questions, an appellate court reviews admissibility rulings under an abuse of discretion standard. *Powell*, 63 S.W.3d at 438. This standard requires that we affirm admissibility rulings when they are within the zone of reasonable disagreement. *Id.*

## B.     Admission of the Extraneous Offense Evidence

During Margo's testimony, the State asked Margo if arguments happened between her and appellant frequently, and Margo replied, "No." When asked if such an incident had occurred before, she responded, "No." Shortly after this exchange, the State sought a hearing outside the jury's presence.[4] The State informed the trial court that, in response to Margo's testimony that nothing like this had happened before, the State wanted to question Margo about a July 24, 2015 incident during which a PPD officer responded to Margo's and appellant's home address following a 911 call regarding an assault. The State notified the court that it intended to call the officer who had responded to the July 2015 incident to the stand. Appellant objected to the evidence as not relevant under Rule 401, more prejudicial than probative under Rule 403, and inadmissible character evidence under Rule 404. The State responded that the evidence was admissible under Code of Criminal Procedure article 38.371, which allows, among other things, testimony or evidence concerning the nature of the relationship between the actor and the alleged victim in certain offenses involving family or dating violence. *See* Tex. Code Crim. Proc. art. 38.371(b).

---

[4] The trial court previously held a hearing concerning Code of Criminal Procedure article 38.371 outside the jury's presence, but did not rule on the admissibility of any evidence at that time.

6

At the close of the hearing, the trial court ruled that the State could "develop anything that you have regarding the prior relationship between the parties." Margo continued testifying before the jury. The State asked her if she had ever called 911 on appellant before, and Margo responded, "No, not that I remember." Margo also testified that the police had never come to her home before April 20, 2016.

The State then called PPD Officer John Smith to testify concerning his response to a 911 call on July 24, 2015, reportedly by Margo. When Smith arrived at appellant's and Margo's home, Margo told Smith that she and appellant had an argument and appellant refused to leave. When she threatened to call 911, appellant tried to choke her, but released her after she bit him. Margo then called 911. Appellant was not present when Smith arrived in response to Margo's 911 call. Smith testified that Margo did not want to press charges. On cross-examination, Smith acknowledged that he did not see any marks, scratches, bruising, or swelling on Margo when he responded to the 911 call.

## C. Application

Appellant first complains that the trial court erred in admitting this evidence over his Rule 404 objection. He asserts that this extraneous offense evidence is not relevant to any fact of consequence outside of conformity.

Article 38.371 permits evidence of "all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense. . ., including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." Tex. Code Crim. Proc. art. 38.371(b). However, article 38.371 does not permit the presentation of character evidence that otherwise would be inadmissible under the Texas Rules of Evidence. *Id*. art. 38.371(c).

Appellant presented a defensive theory that the assault never happened. During opening statements, appellant's counsel told the jury that Margo would testify that she falsely accused appellant of assault because she was intoxicated, insecure, and jealous. When, as here, the defendant presents a defensive theory that the alleged assault never happened, evidence of the relationship between the accused and the alleged victim might include facts demonstrating that the alleged victim recanted prior statements of events or explaining the alleged victim's unwillingness to cooperate with law enforcement or prosecution. *See Gonzalez v. State*, 541 S.W.3d 306, 312 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Appellant's defensive theory, first raised before the jury heard any evidence, opened the door for the State to prove that the assault happened as Margo initially alleged, but that Margo recanted her allegations. *See id.* (citing *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (holding extraneous offense was admissible to rebut defense claim of fabrication made during opening statement)).

Contrary to appellant's argument, the evidence in question did not relate solely to conformity. The trial court could have concluded that evidence of Margo's previous 911 call reporting that appellant had assaulted her was relevant and within the scope of evidence permitted by article 38.371 because it rebuts appellant's defensive theory that the offense never occurred. *See id.* (citing *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997 (reviewing court will sustain trial court's admissibility ruling if correct on any theory of law applicable to the case); *Banks v. State*, 494 S.W.3d 883, 892-93 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd)). "The nature of the relationship between the actor and alleged victim may be relevant to, among other things, confirm the alleged victim's initial—and later recanted—statements to police, or to explain the alleged victim's unwillingness to cooperate with law enforcement or prosecution." *Id.* These uses of such evidence

do not contravene Rule 404(b)'s prohibition against use of character-conformity or propensity evidence because the State is not relying on the evidence to convince the jury of appellant's guilt. *Id.* (citing Tex. R. Evid. 404(b)(1)). In sum, we cannot say that the trial court abused its discretion in admitting this evidence to rebut appellant's defensive theory that the assault never occurred and to explain Margo's recantation of her previous statements to police. *See id.*

Appellant argues alternatively that the probative value of the evidence at issue is substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Rule 403 "favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In undertaking a Rule 403 analysis, a court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

Considering these factors, the July 2015 assault and the current assault were close in time, and the offenses, both of which involved appellant grabbing Margo by the neck, were similar. Additionally, proof that appellant previously physically abused Margo rebutted her trial testimony that appellant did not assault her on April 20, 2016.[5] Thus, the probative value of the evidence was high and strengthened the

---

[5] This proof included testimony from Officer Smith concerning the July 2015 choking incident (about which appellant complains on appeal), as well as testimony from Officer Badgett

9

State's theory that Margo had recanted her allegations of assault. Additionally, the evidence was unlikely to confuse or distract the jury, nor did its presentation consume an inordinate amount of time or repeat evidence already admitted. *See id.* at 642. And, appellant has not shown that the jury was likely to give the evidence undue weight.[6] *See id.* Thus, we conclude the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *Cf. Foster v. State*, No. 01-17-00537-CR, 2018 WL 1914871, at *4-5 (Tex. App.—Houston [1st Dist.] Apr. 24, 2018, no pet.) (mem. op., not designated for publication) (no violation of Rule 403 in admitting evidence of previous assaults of victim in prosecution for family violence assault); *McCleery v. State*, No. 03-17-00154-CR, 2017 WL 4766722, at *6-7 (Tex. App.—Austin Oct. 20, 2017, no pet.) (mem. op., not designated for publication) (same).

For the foregoing reasons, we hold that the trial court acted within its discretion in admitting testimony concerning other instances of physical abuse by appellant during his relationship with Margo. We overrule appellant's sole appellate issue.

---

that Margo had told him appellant had assaulted her several times in the past (about which appellant does not complain on appeal).

[6] The trial court's charge contained a limiting instruction on extraneous-offense evidence:

The defendant is on trial solely on the charge contained in the information. In reference to evidence, if any, that the defendant has previously participated in recent transactions or acts, other than that which is charged in the information in this case, you are instructed that you cannot consider such other transactions or acts, if any, for any purpose unless you find and believe beyond a reasonable doubt that the defendant participated in such transactions or committed such acts, if any; and even then you may only consider the same for the purpose of determining the nature of the relationship between the defendant and the alleged victim, if it does, and for no other purpose.

## Conclusion

Having overruled appellant's issue, we affirm the trial court's judgment.


/s/    Kevin Jewell
       Justice


Panel consists of Justices Busby, Brown, and Jewell.
Do Not Publish — Tex. R. App. P. 47.2(b).