NO. 07-11-00289-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 30, 2012

TOMMY ISRAEL CASTRO, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 11,320; HONORABLE DAN MIKE BIRD, JUDGE

Before HANCOCK and PIRTLE, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant, Tommy Israel Castro, appeals his conviction for the offense of felony murder,[2] and sentence of imprisonment for life in the Institutional Division of the Texas Department of Criminal Justice and $10,000 fine. We affirm.

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2] See TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011).

## Background

On July 4, 2009, appellant and his paramour, Kristina Earnest, were together in an apartment in Vernon, Texas, that the couple shared with two of Kristina's children, Kati Earnest and J.W. Bell. Just before midnight, appellant and Kristina took the five-and-a-half-year-old Kati to the Wilbarger General Hospital's Emergency Room. Kati's body was covered in bruises. Medical personnel attempted to resuscitate Kati, but she did not respond to any of the treatments. Kati was declared dead at 12:01 a.m. on July 5, 2009.

Appellant behaved unusually during the treatment of Kati, and throughout the immediate investigation into Kati's death. Medical personnel described appellant as not being upset and showing no signs of remorse about Kati's condition until life-saving efforts were ceased, at which point appellant became angry. Appellant held J.W. throughout the treatment of Kati, seemed to be trying to cover J.W. with a hat, and refused offers by hospital personnel to take him. Eventually, J.W. was examined. He was discovered to have a gash on his head, and his body was covered in bruises. During an interview with CPS investigators, appellant acted in a domineering fashion toward Kristina, and would not allow the investigators to interview Kristina alone.

After an autopsy was performed on Kati, both appellant and Kristina were arrested and charged with murder. Kristina confessed to having assaulted Kati by hitting her in the stomach five times. However, at appellant's trial, Kristina recanted her confession, and testified that her confession had been coerced by appellant threatening to harm her other children if she did not take responsibility for Kati's death.

According to Kristina's trial testimony, appellant was upset at Kati because he claimed that she had urinated in his car the previous night. He asked Kati if she had "peed" in the car, but Kati denied having done so. Appellant told Kristina that Kati was lying, and directed Kristina to discipline Kati by spanking her. Not being satisfied by Kristina's spanking of Kati, appellant spanked Kati with a board. When Kati failed to respond to appellant's spanking to his satisfaction, appellant turned Kati over and spanked her with the board across her stomach five times. Appellant then made Kati lay on the floor before hitting her two more times across the stomach. Appellant then stepped on Kati's stomach twice. As a result of this assault, Kati exclaimed that she could not take anymore. Apparently satisfied, appellant ordered Kati to accompany him to the parking lot to clean his car.

Later, at around 3:00 p.m., Kristina took a shower that lasted between ten and fifteen minutes. While it was customary for appellant to come and check on Kristina while she was showering, he did not do so on this occasion. Kristina testified that she has no knowledge of what transpired during this time frame. After her shower, Kristina checked on Kati, who was fidgety and seemed to be struggling to get comfortable. Kati remained fidgety and uncomfortable throughout the remainder of the day, but began to complain that her stomach hurt at around 7:00 or 8:00 p.m. When Kristina asked Kati why her stomach hurt, Kati said that it was because appellant had stepped on her.

At around 9:30 or 10:00 p.m., Kati indicated that she felt like she had to throw up. When Kristina went to check on Kati, Kati said that she had diarrhea. Soon thereafter, Kristina gave Kati some pork fried rice to eat. Kati barely ate one bite, and was

3

lethargic and falling asleep. After repeated requests by Kristina to take Kati to the hospital, appellant finally relented sometime around 11:00 p.m. On the way to the hospital, appellant told Kristina to say that the bruises on Kati were from horseplay with other kids at the park, and that they had found Kati drowning in the bathtub.

By his appeal, appellant presents three issues. By his first issue, appellant contends that the evidence is insufficient to establish that appellant committed the crime of felony murder. By his second issue, appellant contends that there was insufficient evidence to corroborate the accomplice witness testimony of Kristina. Finally, by his third issue, appellant contends that the trial court abused its discretion in admitting evidence of appellant's extraneous bad acts through the testimony of Shyla Goodrum.

Issue One – Sufficiency of the Evidence of Felony Murder

By his first issue, appellant contends that the evidence was insufficient to establish that he committed the offense of felony murder, specifically because the evidence was insufficient to establish that he caused Kati's injuries. Appellant premises his argument on perceived inconsistencies in Kristina's testimony, and the lack of corroboration of Kristina's accomplice witness testimony.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a fact finder in concluding that every element of

the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id. (Cochran, J., concurring). When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See id. at 906, 907 n.26 (discussing Judge Cochran's dissenting opinion in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

When conducting a sufficiency review, we consider all the evidence, whether properly or improperly admitted. Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001) (citing Garcia v. State, 919 S.W.2d 370, 378 (Tex.Crim.App. 1994), and Chambers v. State, 805 S.W.2d 459, 460 (Tex.Crim.App. 1991)). As such, even insufficiently corroborated accomplice witness testimony can be sufficient to support a conviction under the Jackson standard. Taylor v. State, 10 S.W.3d 673, 684-85 (Tex.Crim.App. 2000); see McDuff v. State, 939 S.W.2d 607, 614 (Tex.Crim.App. 1997).

The jury was presented with evidence that appellant was routinely abusive toward Kristina and her children. They heard the testimony of Kristina that, on the date in question, appellant assaulted the five-year-old Kati, including striking her on the

5

stomach with a board seven times, and then stepping on Kati's stomach two additional times. The jury also heard evidence that Kristina took a shower during the day and that, uncustomarily, appellant did not check on her during her shower. Upon finishing her shower, Kristina noticed that Kati was fidgety and that she seemed to have an increased level of discomfort. Thus, the jury could have reasonably inferred that appellant assaulted Kati a second time while Kristina was in the shower. The jury also heard the testimony of the medical examiner that the internal injuries that caused Kati's death were consistent with having her abdomen punched and/or stepped on. Considering all of the evidence, we conclude that there was sufficient evidence to establish that appellant caused the death of Kati by punching and/or stepping on her abdomen.

Appellant contends that the evidence was insufficient to establish that he caused Kati's death because there was insufficient corroboration of Kristina's accomplice witness testimony, and due to inconsistencies within Kristina's testimony and that of the medical examiner. As indicated above, the sufficiency of the corroboration of an accomplice witness's testimony is not relevant in assessing the sufficiency of the evidence to support a conviction, and we will address the sufficiency of the corroboration of Kristina's testimony in analysis of appellant's second issue below.

As for the alleged inconsistencies between Kristina's testimony and that of the medical examiner, appellant's own expert testified that, after the assault testified to by Kristina, Kati would have thought she was hungry and would have been able to eat. Furthermore, the medical examiner testified that, depending on her ability to tolerate

6

pain, Kati may have been able to walk normally to appellant's vehicle after the assault.[3] Furthermore, appellant ignores the reasonable inference that the jury could have made that appellant assaulted Kati on two occasions with the second being while Kristina was in the shower. In fact, if the fatal assault occurred at that time, Kristina's testimony about Kati's behavior between that time and her death is consistent with the testimony of the medical examiner.

Concluding that the evidence was sufficient to establish that appellant committed the offense of felony murder, we overrule appellant's first issue.

Issue Two – Sufficiency of Corroboration of Accomplice Witness Testimony

By his second issue, appellant contends that the evidence was insufficient to corroborate the accomplice witness testimony of Kristina.

A factfinder should exercise caution when considering the testimony of an accomplice because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person. Smith v. State, 332 S.W.3d 425, 439 (Tex.Crim.App. 2011). To account for such incentives, a conviction cannot be based on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed. See TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Because Kristina was indicted for the same offense as appellant, she is an accomplice witness as a matter of law. See Smith, 332 S.W.3d

_____

[3] From evidence regarding the domineering way in which appellant interacted with Kristina's children and the fear in which they were held, it is reasonable to infer that Kati would try to comply with appellant's demand that she accompany him to his vehicle without exhibiting the pain that she was in.

at 439. In conducting a sufficiency review under the accomplice witness rule, the court eliminates the accomplice testimony from consideration and examines the record to see if any evidence tends to connect the defendant to the commission of the offense. Solomon v. State, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001). While a defendant's mere presence before, during, or after an offense is, by itself, insufficient to corroborate an accomplice witness's testimony, evidence of such presence coupled with other suspicious circumstances can be enough to tend to connect the accused to the offense. Dowthitt v. State, 931 S.W.2d 244, 249 (Tex.Crim.App. 1996).

In the present case, the evidence clearly establishes that appellant was present before, during, and after the assault that caused Kati's death. While appellant's presence during the crime alone is not sufficient corroboration of Kristina's testimony, there was sufficient evidence of other suspicious circumstances that would have allowed the jury to conclude that appellant was connected to the offense. At the emergency room, hospital personnel testified that appellant did not act in a manner consistent with concern for Kati or grief for her death. In fact, the only emotional reaction exhibited by appellant was anger when the decision to cease life-saving efforts was made. The jury also heard evidence that appellant seemed more focused on concealing J.W.'s injuries than he was on monitoring Kati's condition. Additionally, the jury heard evidence that Kristina, Kati, and J.W. were covered in bruises, yet appellant had no visible injuries.[4] In addition, the jury heard evidence that, after Kati's death,

---

[4] While appellant argues that the injuries sustained by Kristina are indicative that she was the one that assaulted Kati, it is not reasonable to conclude that the five-and-a-half-year-old Kati was capable of inflicting the extensive bruising that was discovered on

appellant described Kati as stubborn, jealous, and a glutton. Appellant's attitude toward Kati, after her death, was described to the jury as cold. Witnesses also testified that they felt as if appellant blamed Kati for her death by connecting it to Kati having urinated in appellant's car. The jury also heard testimony regarding statements made by appellant that he would not tell the truth about the events of July 4, 2009, and that he knew what needs to be said in order for the "truth" to set everyone free. As will be discussed in more detail below, the jury also heard the testimony of Shyla Goodrum detailing appellant's similar pattern of abuse toward her and, eventually, her child in a prior romantic relationship between Goodrum and appellant. Finally, the medical examiner's testimony about the manner and means of Kati's death are consistent with Kristina's testimony detailing appellant's assault on Kati.

Considering all of the nonaccomplice evidence in a manner affording appropriate deference to the jury's role as factfinder, we conclude that this evidence is sufficient to tend to connect appellant to the crime of the felony murder of Kati. As such, this evidence provides sufficient corroboration of Kristina's accomplice witness testimony and, therefore, we overrule appellant's second issue.

### Issue Three – Admissibility of Extraneous Offense Testimony

By his third issue, appellant contends that the trial court abused its discretion in admitting evidence of extraneous offenses committed by appellant. Specifically, appellant contends that the testimony of appellant's former girlfriend, Shyla Goodrum,

---

Kristina's body. However, the lack of any visible injuries on appellant allows for a reasonable inference that he was the assailant of Kristina, Kati, and J.W.

9

was character evidence that the trial court admitted in violation of Texas Rules of Evidence 403 and 404(b). See TEX. R. EVID. 403, 404(b).[5]

As appellant's issue challenges the trial court's admission of evidence, we review the decision under the abuse of discretion standard. See Billodeau v. State, 277 S.W.3d 34, 39 (Tex.Crim.App. 2009). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990). A reviewing court applying the abuse of discretion standard should not reverse a trial judge's decision whose ruling was within the zone of reasonable disagreement. Green v. State, 934 S.W.2d 92, 102 (Tex.Crim.App. 1996).

Evidence of extraneous acts of misconduct may be admissible if the uncharged act is relevant to a material issue in the case, and the probative value of the evidence is not significantly outweighed by its prejudicial effect. Segundo v. State, 270 S.W.3d 79, 87 (Tex.Crim.App. 2008). Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evidence of extraneous misconduct may be admissible, however, when such evidence is relevant to a non-character-conformity fact of consequence in a case, such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 404(b); Berry v. State, 233 S.W.3d 847, 858 (Tex.Crim.App. 2007); see Robbins v. State, 88 S.W.3d 256, 259 (Tex.Crim.App. 2002). Evidence admissible under Rule 404(b), however, may

---

[5] Further reference to Texas Rules of Evidence will be by reference to "Rule __."

be inadmissible under Rule 403 if the probative value of such evidence is substantially outweighed by unfair prejudice. Prince v. State, 192 S.W.3d 49, 56 (Tex.App.— Houston [14th Dist.] 2006, pet. ref'd). In conducting a Rule 403 analysis, the following factors should be taken into consideration: (1) the inherent probative force of the proffered evidence; (2) the proponent's need for that evidence; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Gigliobianco v. State, 210 S.W.3d 637, 641–42 (Tex.Crim.App. 2006).

In the present case, appellant objected to Goodrum's testimony in a hearing held outside the presence of the jury. After hearing argument regarding the testimony, the trial court overruled appellant's objections on the bases that (1) the door was opened by appellant's opening argument and by his cross-examination of State's witnesses; (2) the evidence served non-character-conformity purposes, such as to prove motive, opportunity, intent, plan, knowledge, identity, and absence of mistake or accident; and (3) the evidence was so similar to the present case as to constitute a signature of the alleged crime. Appellant obtained running objections to Goodrum's testimony under Rules 403 and 404(b), and the jury was given a limiting instruction regarding the appropriate consideration of Goodrum's testimony.

11

Looking first to appellant's Rule 404(b) objection, the record clearly reflects that the identity of the perpetrator of the assault on Kati was in issue throughout the trial. Extraneous offense evidence may be admitted to prove identity. Segundo, 270 S.W.3d at 88. One manner in which identity can be proven by admission of extraneous offense evidence is by showing the defendant's *modus operandi*, that is, that the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they constitute the defendant's "signature." Id.

Goodrum's testimony regarding appellant's misconduct during their romantic relationship is distinctively similar to Kristina's testimony of appellant's assaultive actions toward her and her children. The distinctive similarities between the two relationships include the fact that appellant's abuse of each woman began due to appellant's accusations that the women looked at other men; appellant would booby trap the door to their apartment to monitor whether the women had opened the door while he was away; appellant would check the genitals of the women to determine whether they had sexual relations with someone else; appellant started assaulting the women's children when the women stopped crying during his assaults; when assaulting the children, appellant would use a wooden board; appellant's abuse of the children included stepping on and standing on the children; and one thing that would cause appellant to assault the children was his suspicion that the child was lying. The overall pattern of abuse described by Goodrum is significantly similar to the pattern of abuse described by Kristina. Furthermore, Goodrum's description of appellant's abuse of her son is strikingly similar to Kristina's description of appellant's deadly assault of Kati. Thus, Goodrum's testimony of extraneous misconduct by appellant established a

signature and was relevant to establish that it was appellant, rather than Kristina, that assaulted Kati on July 4, 2009. As such, we conclude that the trial court did not abuse its discretion in overruling appellant's Rule 404(b) objection to Goodrum's testimony.

Turning now to appellant's Rule 403 objection, we must address the factors identified in Gigliobianco. The inherent probative force of Goodrum's testimony is substantial. Because appellant's defensive theory was that it was Kristina that caused Kati's death, Goodrum's testimony regarding appellant's distinctively similar pattern of assaultive behavior and manner of abuse toward her child strongly serve to make it more probable that it was appellant that assaulted Kati leading to her death. See Gigliobianco, 210 S.W.3d at 641. The State's need for Goodrum's testimony was high due to the fact that the only two people that could testify regarding the events of July 4, 2009, presented completely contradictory accounts of those events. The State was required to prove that it was appellant that caused the death of Kati, and appellant placed identity in issue throughout the trial. As such, Goodrum's testimony regarding appellant's prior misconduct, especially as it relates to his assaultive behavior toward her son, is strong evidence that appellant was the perpetrator of the offense for which he was charged. See Siqueiros v. State, 685 S.W.2d 68, 72 (Tex.Crim.App. 1985) (en banc) (discussing the admissibility of extraneous misconduct evidence when defendant puts identity in issue). As for the tendencies of the evidence to suggest a decision on an improper basis or to distract or confuse the jury, we acknowledge that Goodrum's testimony that appellant had previously committed brutal assaults against both her and her child might arouse the hostility of the jury. However, the trial court instructed the jury regarding the appropriate use of the testimony, and the nature of appellant's assault

on Goodrum's child, which did not cause his death or apparently any serious or permanent injury, was less emotional than the testimony regarding the nature of appellant's assault on Kati. See Blackwell v. State, 193 S.W.3d 1, 15 (Tex.App.—Houston [1st Dist.] 2006, pet. ref'd) ("[A] trial court's instructions to the jury are a factor to consider in determining whether the jury considered the extraneous-offense evidence improperly…."). Finally, it is clear that Goodrum's testimony took a relatively small amount of time, and did not repeat any evidence that had already been admitted.

Considering each of the Gigliobianco factors together, we conclude that the probative value of Goodrum's testimony was not substantially outweighed by the danger of unfair prejudice. As such, the trial court did not abuse its discretion in admitting Goodrum's testimony over appellant's Rule 403 objection.

Concluding that the trial court did not abuse its discretion in overruling appellant's Rule 403 or 404(b) objections to Goodrum's testimony, we overrule appellant's third issue.

Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.

14