pd-1589-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/8/2015 11:13:49 AM
Accepted 12/10/2015 5:22:16 PM
ABEL ACOSTA
CLERK

In the
Court of Criminal Appeals of Texas

Cause No. 14-14-00449-CR
In the
Court of Appeals for the Fourteenth District of Texas
at Houston

Cause No. 0924378
In the 180th District Court
Of Harris County, Texas

ROGELIO MORA
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

PETITION FOR DISCRETIONARY REVIEW

Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas 77025
(713) 228-3800
Texas Bar No. 00787197
Casey.garrett@sbcglobal.net

FILED IN
COURT OF CRIMINAL APPEALS

December 10, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

Appellant: Rogelio Mora

Counsel for Appellant at Trial:

> Rudy Morin Duarte
> 2016 Main Street, Ste 103
> Houston, Texas 77002
> Texas Bar No. 06144140
> 713-650-1240

Counsel for Appellant on Appeal:

> Casey Garrett
> 4010 Bluebonnet, Ste. 204
> Houston, Texas 77025
> (713) 228-3800
> Texas Bar No. 00787197

Counsel for the State at Trial:

> Mary McFaden
> Texas Bar No. 24036822
> Lauren Bard
> Texas Bar No. 24058398
> Assistant District Attorneys
> 1201 Franklin
> Houston, Texas 77002
> 713-755-5800

Counsel for the State on Appeal:

> Harris County District Attorney's Office
> Appellate Division
> 1201 Franklin, Suite 600
> Houston, Texas 77002
> (713) 755-5800

Trial Judge: The Honorable Carroll E. Wilborn

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................ 2

TABLE OF CONTENTS.......................................................................................... 3

INDEX OF AUTHORITIES..................................................................................... 4

STATEMENT REGARDING ORAL ARGUMENT.................................................. 5

STATEMENT OF THE CASE................................................................................. 5

STATEMENT OF PROCEDURAL HISTORY......................................................... 5

QUESTION PRESENTED FOR REVIEW .............................................................. 6

REASONS FOR REVIEW ...................................................................................... 6

PRAYER................................................................................................................ 12

CERTIFICATE OF SERVICE ............................................................................... 13

# INDEX OF AUTHORITIES

**Cases**

*Billodeau v. State*, 277 S.W.3d 34 (Tex. Crim. App. 2009) ...................................... 7

*Gigliobianco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006) ............................ 9

*Green v. State*, 934 S.W.2d 92 (Tex. Crim. App. 1996). ......................................... 7

*Montgomery v. State*, 810 S.W.3d 372 (Tex. Crim. App. 1990) ............................ 7

*Prince v. State*, 192 S.W.3d 49 (Tex. App.—
Houston [14th Dist.] 2006, pet. ref'd)............................................................ 8, 10

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Mora does not request oral argument.

## STATEMENT OF THE CASE

Mr. Mora was charged by indictment with the felony offense of capital murder (C.R. 9). In particular, Mr. Mora was charged with causing the death of Prisileano Rodriguez by shooting him with a deadly weapon, namely a firearm, while in the course of committing and attempting to commit a robbery (C.R. 9). Mr. Mora pled not guilty (R.R.2 – 11). The case was tried before a jury and the jury found Mr. Mora guilty as charged in the indictment (C.R. 123). Punishment was automatically set at confinement for life without parole in the Texas Department of Criminal Justice, Institutional Division (C.R. 123-125). Mr. Mora timely filed notice of appeal (C.R. 125).

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals filed a memorandum opinion affirming the conviction on October 22, 2015. No motion for rehearing was filed. Pursuant to Rule 68.2 of the Texas Rules of Appellate Procedure, this Petition for Discretionary Review should be filed thirty days after the day the court of appeals filed its opinion. A motion for extension of time was filed within fifteen days of the due date.

5

## QUESTION PRESENTED FOR REVIEW

If a defendant is living out of the country for more than a decade and there is no evidence to suggest that he fled to the home of his parents but rather the evidence merely showed his family history and origin is from another country, does a trial court err in allowing the State to present highly prejudicial testimony about his pursuit and arrest even though this evidence is insufficiently probative?

## REASONS FOR REVIEW

The decision of the court of appeals conflicts with applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States.

## APPELLANT'S QUESTION FOR REVIEW

If a defendant is living out of the country for more than a decade and there is no evidence to suggest that he fled to the home of his parents but rather the evidence merely showed his family history and origin is from another country, does a trial court err in allowing the State to present highly prejudicial testimony about his pursuit and arrest even though this evidence is insufficiently probative?

In an effort to shore up its insufficient evidence, the State presented evidence that Mr. Mora left the jurisdiction and went to Mexico during an investigation into the death of the complainant. Although nothing in the record supports this conclusion, the State introduced the evidence in an attempt to suggest that Mr. Mora must have fled to Mexico or, alternatively, to suggest that Mr. Mora must be a an outsider or a person of bad character because he was seen in

Matamoros and Matamoros has become "a major place for cartel activity over the past few years." (R.R.5 – 15). Counsel for the defense objected to the introduction of this evidence under Rules 404(b) and 403 of the rules of evidence.

When an appellant challenges the trial court's admission of evidence, the appellate court reviews the decision under an abuse of discretion standards. *See Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.3d 372, 380 (Tex. Crim. App. 1990). A reviewing court applying the abuse of discretion standard should not reverse a trial judge's decision whose ruling was within the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex. Rules Evid. 404 (b). It may be admissible if it is relevant to non-character conformity facts, such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. *Id*.

The court below relied on opinions establishing that evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn. *See* Mem. Op. 7, citing *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) and *Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). This reliance was misplaced. As the court of appeals acknowledged, the evidence showed that Officer Robert King testified that he went to serve an arrest warrant on appellant

7

in September 2002 but Mr. Mora was not at the residence where the police believed he was living. (Mem. Op. 7). Eight years later, U.S. Marshal Max Pinon located Mr. Mora in Matamoros, Mexico. (Mem. Op. 7). The mere fact that Mr. Mora was not living where the police believed he was living, however, coupled with the fact that a U.S. Marshal located him nearly a decade later in Mexico, does not establish "flight." The court concluded that "testimony that appellant left his job in June 2002 and moved to Mexico sometime shortly thereafter was relevant circumstantial evidence from which the jury could infer that appellant committed the crime and sought to avoid arrest." (Mem. Op. 8). The court is mistaken. Testimony that a potential investigation target has left a job or is no longer employed is not evidence of anything. There was no testimony about why he left the job, whether he'd been fired or quit, what kind of job it was, whether he had a better opportunity at a different job or what reasons he gave for leaving the job. Moreover, the evidence did not show that he moved to Mexico "sometime shortly thereafter." Rather, the evidence showed he was found in Mexico nearly a decade later.

Even if evidence may be admissible under Rule 404(b), it may nevertheless remain inadmissible under Rule 403 if the probative value of such evidence is substantially outweighed by unfair prejudice. *Prince v. State*, 192 S.W.3d 49, 56 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). In conducting a Rule 403 analysis, the following factors should be taken into consideration: (1) the inherent probative force of the proffered evidence; (2) the proponent's need for that

evidence; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract; (5) any tendency of the evidence to be given undue weight by a jury; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.w.3d 637, 641-42 (Tex. Crim. App. 2006).

In the instant case, the State attempted to buoy up a very slender thread of identification evidence with character evidence about Mr. Mora's alleged flight to Matamoros, Mexico. The evidence at issue came down to a police officer testifying they "had information" he was "not living in Harris County" after Kelly Holloway identified him from a photo array (R.R.4 – 307), a U.S. Marshal suggesting that Mr. Mora is a U.S. citizen with parents from Mexico (R.R.5 – 17) and an assertion from the U.S. Marshal that deportation was unsuccessful (R.R.5 – 19). The U.S. Marshal threw in extra facts such as, "deportation was unsuccessful because the immigration agents in Matamoros were too scared to go and look for Mr. Mora" (R.R.5 – 19) and "over the last few years, Matamoros had been a major place for cartel activity" (R.R.5 – 15), despite the fact that there was nothing else during the trial to indicate anyone was involved in a drug cartel, and nothing to indicate Mr. Mora had illegal business in Matamoros. This evidence was obviously intended to sway the jury into a conviction based on the shadowy idea that Mr. Mora was involved in Mexican drug cartels, and therefore must have been

responsible for the shooting of P.J., even though the events on the night P.J. was shot had nothing to do with drugs or drug cartels.

Even if the trial court concluded that the evidence was admissible under 404(b) as something other than character evidence, the evidence fails the test under 403. The trial court put nothing on the record with regard to these factors. In fact, the judge initially granted the defense motion in limine and then inexplicably, without argument or explanation, reversed itself (C.R. 98, R.R.4 – 8). Reviewing the 403 factors, however, the only conclusion is that the evidence was highly prejudicial and any probative value was outweighed by unfair prejudice. *See* *Prince v. State*, 192 S.W.3d 49, 56 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Considering the first two factors, the evidence the State used to paint a picture of Mr. Mora as a drug cartel member who fled to Mexico was potentially probative because the State had no other evidence linking Mr. Mora to the shooting and no other motive or circumstances to point to regarding Mr. Mora's involvement. Under the second prong, the State needed the evidence because its case regarding Mr. Mora's identity as the perpetrator was otherwise weak and insufficient. The State should not be rewarded for going to trial with weak identification evidence, however, and the fact that the State's own case was weak and hard to substantiate should not give it an advantage in the weighing of factors under Rule 403. The third factor is whether the evidence tended to suggest a decision on an improper basis, and the evidence was plainly prejudicial under this

10

test. The State gave the jury a shadowy demon from the news media, Mexican drug cartel members, and grafted this image onto Mr. Mora to persuade them to convict with otherwise limited evidence. Likewise, evidence about the State's pursuit of Mr. Mora in Mexico and evidence from a U.S. Marshal about the history and character of Matamoros, the difficulty of extraditing U.S. citizens with Mexican parents, and the corruption and fear of Mexican immigration officials had a high likelihood of distracting and confusing the jury in a case about a simple robbery and murder on American soil. Factors five and six also weigh against the State, as no special instructions or information was given to the jury about evaluating the probative force of the evidence and the presentation of the evidence needlessly extended the length of the trial and made the State's evidence seem weightier and more complete than it was.

The appellate court justified the State's weaknesses in each of these five categories by pointing to the State's interest in explaining the lapse of time between the crime and Mr. Mora's arrest. This one interest, however, was not sufficient to overcome the prejudicial effect of the evidence.

Defense counsel objected to this evidence and the State should not have been allowed to use it. The use of this confusing, highly prejudicial evidence gave the jury a reason to convict Mr. Mora in the absence of sufficient evidence to show he killed P.J. The trial court's decision was outside the reasonable zone of disagreement and this Court should reverse and remand for a new trial.

## PRAYER

Appellant respectfully prays this Honorable Court to grant his petition for discretionary review.

Respectfully submitted,

____/s/ Casey Garrett____
Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas  77025
(713) 228-3800
Texas Bar No. 00787197
Casey.garrett@sbcglobal.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent through the e-file system to the following party:

Harris County District Attorney's Office
Appellate Division
1201 Franklin, Suite 600
Houston, Texas  77002

_____/s/ Casey Garrett_____
Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas  77025
(713) 228-3800
Texas Bar No. 00787197
Casey.garrett@sbcglobal.net

13

In the
Court of Criminal Appeals of Texas

Cause No. 14-14-00449-CR
In the
Court of Appeals for the Fourteenth District of Texas
at Houston


ROGELIO MORA
*Appellant*


v.


THE STATE OF TEXAS
*Appellee*


CERTIFICATE OF COMPLIANCE


Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas  77025
(713) 228-3800
Texas Bar No. 00787197
Casey.garrett@sbcglobal.net

1

This is to certify that the Petition for Discretionary Review filed in the above-numbered cause has 2,194 words in compliance with Rule 9 of the Texas Rules of Appellate Procedure.

Respectfully submitted,

____/s/ Casey Garrett____
Casey Garrett
4010 Bluebonnet, Ste. 204
Houston, Texas  77025
(713) 228-3800
Texas Bar No. 00787197
Casey.garrett@sbcglobal.net

**Affirmed and Memorandum Opinion filed October 22, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00449-CR

---

### ROGELIO MORA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 924378**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Rogelio Mora of capital murder, and he was sentenced to life in prison. *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2014). In two issues, appellant contends that: (1) the evidence was legally insufficient to support his conviction; and (2) the trial court abused its discretion in allowing the admission of evidence that appellant fled to Mexico after the murder and was arrested there 10 years later. We affirm.

## BACKGROUND

Complainant Prisileano "PJ" Rodriguez was riding in a truck with three friends in the early morning hours on May 19, 2002. When they arrived at the complainant's apartment complex to drop him off, a man ran in front of the truck and demanded that they stop. The man then banged on the driver's window with a pistol and told the driver to open his door. The driver complied and got out, at which point another man approached; the two men proceeded to go through the driver's pockets and repeatedly kick the driver.

A Hispanic male approached the passenger side door while this was going on and banged on the passenger window with a pistol, demanding that complainant get out of the truck. Complainant complied.

After finding nothing of value in the driver's pockets, the two men on the driver's side told the driver to get back in the truck. The driver entered the truck and put it in gear. The driver ducked and took his foot off the clutch after hearing a gunshot, and the truck started driving away.

Kelly Holloway was a passenger in the truck sitting in the backseat on the floor facing the passenger side. When the first gunshot went off and the truck started driving away, she looked out the rear window and saw the third man shoot complainant several times.

Information from an informant provided the investigating officer with names of individuals thought to be involved in the crime, including appellant's name.[1] The officer included a picture of appellant in one of the photo arrays he showed to the three truck occupants who had been riding with complainant. Holloway

---

[1] The informant, Antonio Moreno, was described as an acquaintance of the appellant. Moreno did not testify at trial, and it is unclear how he knew that appellant and the other individuals were involved with the crime.

2

immediately identified appellant as the man who shot complainant after viewing multiple photo arrays featuring more than 20 Hispanic males.[2]

A probable cause warrant was issued for appellant and was executed on September 16, 2002. Appellant could not be located at his previous residence and officers learned that he had left his job in June. Appellant was located in Matamoros, Mexico in 2010; he was arrested there in 2012 and returned to U.S. custody. Appellant was tried in May 2014, and was convicted by a jury of capital murder. Punishment was set at confinement for life without parole. This appeal followed.

## ANALYSIS

### I. Sufficiency of the Evidence

In his first issue, appellant challenges the legal sufficiency of the evidence establishing his identity. Appellant contends that the only evidence linking appellant to the crime was an identification by a single eyewitness based on a brief encounter, which appellant contends was insufficient to support the conviction.

#### A. Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

---

[2] The driver testified that he never saw the man on the passenger side. The other occupant in the back seat was sitting in a fold-down jump seat that faced the driver's side of the vehicle; he also did not see the third individual on the passenger side. Both separately identified from photo arrays the two other individuals named by the informant as the two men on the driver's side.

3

In determining whether the evidence is legally sufficient to support a conviction, we view the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *see also Jackson*, 443 U.S. at 319. The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence, and we do not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the jury. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

**B. Discussion**

To establish the offense of capital murder, the State had to prove that appellant (1) intentionally caused the death of complainant, (2) while in the course of committing or attempting to commit robbery. *See* Tex. Penal Code Ann. § 19.03(a)(2). On appeal, appellant challenges only the sufficiency of the evidence regarding the identity of the person committing the offense; appellant does not challenge the sufficiency of the evidence demonstrating intent or that the murder occurred during the course of a robbery.

The testimony of a single eyewitness can be sufficient to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *see also Walker v. State*, 180 S.W.3d 829, 832 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Likewise, the jury alone weighs the evidence, and it may find guilt without physical evidence linking the accused to the crime. *Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Inconsistencies in witness testimony do not render the evidence insufficient.

4

*Romero v. State*, 406 S.W.3d 695, 697 (Tex. App.—Houston [14th Dist.] 2013), *rev'd on other grounds*, 427 S.W.3d 398 (Tex. Crim. App. 2014) (per curiam).

Holloway was the only truck occupant who saw appellant's face. Holloway testified that, while the driver was being pulled out of the truck, appellant came up to the passenger side door and hit the window with a pistol demanding that complainant "[o]pen up the door" and "get out of the car." Holloway stated that her attention was focused toward the passenger side during the encounter, and that she "stayed down and just paid attention to what [she] could see directly in front of [her]."

Holloway testified that, as complainant was getting out of the truck, she watched appellant yank the necklace from complainant's neck. Appellant then leaned into the truck and demanded money from the occupants; appellant's head was inside the truck for five to ten seconds. Holloway testified that the streetlights were on so she got a good look at appellant's face. She also testified that she could see appellant's face as he was walking up to the truck, "[s]o, it was more than just five or ten [seconds] that [she] saw his face."

Holloway testified that the driver got back into the truck, and, as the truck started driving away, she heard the first shot and turned to look out the back window. She then saw appellant shoot complainant several times. Although she could not see appellant's face as he was shooting complainant, Holloway testified that she was "absolutely sure" it was the same person she had seen as he walked towards the truck and leaned into the truck.

At trial, Investigator Richard Martinez testified that he showed Holloway multiple photo arrays. When Martinez showed Holloway a photo array with appellant's photo, Holloway "immediately picked out [appellant] and said that that was the person who she saw shoot her friend PJ." Martinez testified that Holloway

5

picked out appellant's photo with no hesitation. Likewise, Holloway testified that her identification of appellant was immediate, and that she identified appellant without hesitation.

Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable juror could find that appellant committed the offense of capital murder. *See Aguilar*, 468 S.W.2d at 76-77 (evidence legally sufficient where only one witness saw appellant shoot victim); *In re D.R.T.*, 339 S.W.3d 208, 210 (Tex. App.—El Paso 2011, no pet.) (testimony by single witness that appellant was only three to four feet away from witness in adjacent vehicle and had his head out the window prior to shooting, along with photo and in-court identifications, was sufficient to support conviction); *Walker*, 180 S.W.3d at 831-33 (where robbery lasted less than a minute and perpetrator was wearing a hood, evidence was legally sufficient to support conviction even though based on single witness's identification because witness testified that he had studied the perpetrator's face and had seen it clearly, and identified the perpetrator in a photo array and in court). Appellant's first issue is overruled.

## II.   Admission of Evidence

In his second issue, appellant contends the trial court abused its discretion in allowing the admission of evidence that appellant fled to Mexico after the murder and was arrested there 10 years later. Appellant contends that the probative value of such evidence was outweighed by its highly prejudicial nature.

### A.   Standard of Review

We review a trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, for an abuse of discretion. *Martinez*

*v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). An abuse of discretion only occurs if the trial court's determination lies outside the zone of reasonable disagreement. *Id.*

## B.    Discussion

Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn. *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994); *Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). However, before such evidence is admitted it must appear that the evidence has some relevance to the offense under prosecution. *Bigby*, 892 S.W.2d at 883; *Burks*, 876 S.W.2d at 903. Evidence of flight may be "relevant to show efforts made to locate or apprehend a defendant, his pursuit and capture, [and] circumstances of his arrest . . . ." *Cantrell v. State*, 731 S.W.2d 84, 92 (Tex. Crim. App. 1987). Once this relevancy requirement is met, evidence of flight to avoid arrest is admissible unless the defendant shows that the flight was related to circumstances unrelated to the charged offense. *Bigby*, 892 S.W.2d at 883; *Burks*, 876 S.W.2d at 903.

At trial, Officer Robert King testified that he went to serve an arrest warrant on appellant in September 2002. Appellant was not at the residence where he was believed to be living, and subsequent investigation revealed that appellant had left his job in June 2002 and that he was not living or working in Harris County. The case remained dormant until U.S. Marshal Max Pinon received a tip in November 2010 that appellant was in Matamoros, Mexico. Pinon testified that, after unsuccessfully seeking both deportation and extradition of appellant from Mexico, Pinon had a deputy marshal in Mexico City travel to Matamoros and confirm appellant's location. The deputy marshal then obtained assistance from the Mexican Marines to apprehend appellant in August 2012. Appellant was turned over to the Mexican immigration service in Matamoros. Cameron County

7

Sheriff's Deputy Andres Arreola testified that he received custody of appellant at the U.S. border in September 2012, and that appellant was transferred to Harris County.

The testimony that appellant left his job in June 2002 and moved to Mexico sometime shortly thereafter was relevant circumstantial evidence from which the jury could infer that appellant committed the crime and sought to avoid arrest, and was therefore admissible. *See Burks*, 876 S.W.2d 877, 903-04 ("Since appellant was already identified as a suspect in the case, his flight when confronted by the police was relevant to the issue of whether or not he committed the instant crime."); *Martinez v. State*, 140 S.W.2d 187, 193 (Tex. Crim. App. 1939) (evidence of flight was admissible where, "a short time after the disappearance of the deceased person and his wife, . . . the appellant disposed of his automobile and fled to Mexico, where he remained for a period of practically two years . . ."). The testimony also was relevant to explain why trial was taking place 12 years after the murder, and to illustrate the efforts made to locate and apprehend appellant. *See Cantrell*, 731 S.W.2d at 92.

Once the testimony concerning appellant's flight to Mexico and subsequent arrest there was determined to be relevant, the burden shifted to appellant to affirmatively show that his sudden departure to Mexico was not connected with the offense at trial. *See Bigby*, 892 S.W.2d at 883; *Burks*, 876 S.W.2d at 903. Appellant made no effort to provide any such explanation.

Appellant further contends on appeal that the testimony should have been excluded even if relevant because its probative value was substantially outweighed by a danger of unfair prejudice. *See* Tex. R. Evid. 403. A proper Rule 403 analysis includes, but is not limited to, the following factors: (1) the inherent probative force of the proffered evidence; (2) the proponent's need for that

8

evidence; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

Regarding the first factor, appellant admits that the testimony was potentially probative, but only "because the State had no other evidence linking [appellant] to the shooting and no other motive or circumstances to point to regarding [appellant's] involvement." This analysis ignores the testimony's probative value in explaining the lapse of time between the murder and trial.

Appellant likewise concedes the State's need for the testimony, but contends that the necessity was the result of otherwise weak and insufficient evidence establishing appellant's identity as the assailant who shot complainant. However, this argument again ignores the testimony's value in establishing a timeline for the events leading up to appellant's arrest and trial.

Regarding the third factor — the tendency of the evidence to suggest a decision on an improper basis — appellant argues that the testimony suggested appellant "must be an outsider or a person of bad character" because of testimony by U.S. Marshal Pinon that the city in Mexico where appellant was arrested "has been a major place for cartel activity" over the past few years. However, no testimony was presented that appellant was involved in any cartel activity. To the contrary, Deputy Arreola testified that appellant was not the subject of any known criminal investigation in Cameron County or Matamoros at the time of his arrest, and that Arreola would have known had he been under investigation.

9

Regarding the fourth factor, appellant contends that testimony regarding the State's pursuit of appellant in Mexico, the history and character of Matamoros, the difficulty of extraditing U.S. citizens with Mexican parents, and the corruption and fear of Mexican immigration officials was likely to confuse or distract the jury. This testimony explained the State's difficulty in arresting appellant in Mexico, which in turn explained the two-year span between appellant's location in Mexico and his arrest.

Regarding the fifth factor, appellant contends that the testimony was likely to be given undue weight by a jury because no limiting instruction was given to the jury. However, appellant neither requested such a limiting instruction nor objected to its omission from the jury charge.

Finally, appellant contends that the testimony "needlessly extended the length of the trial and made the State's evidence seem weightier and more complete than it was." Reviewing the testimony, we cannot conclude that the testimony consumed an inordinate amount of time or merely repeated evidence already admitted. The testimony accounted for a small portion of the total trial testimony, did not repeat the testimony of other witnesses, and was elicited from only two of the State's eleven witnesses.

Reviewing all of the factors, we conclude that the trial court did not abuse its discretion in allowing testimony concerning appellant's flight to Mexico and subsequent arrest there. We overrule appellant's second issue.

## CONCLUSION

We overrule appellant's two issues and affirm the judgment of the trial court.

/s/    William J. Boyce
         Justice

Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).



# JUDGMENT

## The Fourteenth Court of Appeals

ROGELIO MORA, Appellant

NO. 14-14-00449-CR

V.

THE STATE OF TEXAS, Appellee

---

This cause was heard on the transcript of the record of the court below. Having considered the record, this Court holds that there was no error in the judgment. The Court orders the judgment **AFFIRMED**.

We further order appellant pay all costs expended in the appeal.

We further order this decision certified below for observance.